UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES MCCURDY, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:15-CV-01677 |
| | § | |
| NATIONAL CREDIT ADJUSTERS, | § | |
| | § | |
| Defendant. | § | |

## **OPINION & ORDER**

Pending before the Court in the above-referenced case is Plaintiff's Motion for Default Judgment (Doc. 10) against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692(p) ("FDCPA"), and the Texas Debt Collection Practices Act, Tex. Fin. Code §§ 392.301–392.404 ("TDCPA"). Having considered the motion and relevant law, the Court is of the opinion that Plaintiff's motion should be GRANTED.

### **I. Background**

This case arises from allegations that Defendant, acting as a "debt collector" as defined by the FDCPA and TDCPA, attempted to collect on a debt that Plaintiff never incurred. Because Defendant has failed to appear in this matter, the Court accepts as true the allegations in the Complaint and the contents of the supporting affidavits. *See Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact . . . and is barred from contesting . . . the facts thus established.")

Sometime around May 2015, Defendant National Credit Adjusters ("NCA") sent a collection letter to Plaintiff Charles McCurdy ("McCurdy") stating that it was attempting to

collect on a debt.[1] (Doc. 1 at ¶ 13.) Soon after, McCurdy began receiving automated collection calls from NCA. (*Id.* at ¶ 14.) McCurdy promptly informed NCA that he disputed the debt, demanded all communication to his telephone cease, and requested verification of the debt. (*Id.* at ¶ 15.) The original loan agreement NCA subsequently sent pursuant to McCurdy's request for verification did not bear his signature. (*Id.* at ¶¶ 16–17.) McCurdy then advised NCA that his identity had been stolen and provided a copy of the police report to NCA. (*Id.* at ¶¶ 18–19.) Nevertheless, collection efforts continued unabated. (*Id.* at ¶ 20.) When McCurdy reiterated that he disputed the debt and renewed his requests for the calls to cease, NCA threatened to take legal action if payment was not received by June 2, 2015. (*Id.* at ¶ 21.)

As a result, on June 12, 2015, McCurdy filed a Complaint alleging that NCA violated the FDCPA and TDCPA. (*See* Doc. 1.) On August 1, 2015, McCurdy filed the executed service of summons, indicating that NCA was served with process on July 31, 2015. (*See* Doc. 5.) Accordingly, NCA's answer or other responsive pleading was due on August 21, 2015. (*See id.*) However, NCA did not respond or appear.

On October 2, 2015, McCurdy requested that the Clerk of Court enter a Default. (Doc. 7.) The Clerk did so on October 13, 2015. (Doc. 9.) On November 2, 2015, McCurdy filed the instant Motion for Default Judgment. (Doc. 10.) Two days later, a scheduling conference was held before Magistrate Judge Stacy. NCA failed to appear and the conference was reset for February 9, 2016. (*See* Doc. 11.) After McCurdy requested a continuance, the conference was reset to April 6, 2016. (*See* Docs. 12, 14.) Despite the additional delay, NCA again failed to appear.

---

[1] Because McCurdy had never incurred any debt in connection with a business or commercial venture, even if it had been an obligation owed by him, the debt could only have been for incurred for personal, family, or household purposes. (Doc. 1 at ¶ 11.)

## II. Legal Standard

There are three steps to obtaining a default judgment in the Fifth Circuit: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). When a defendant fails to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure a default occurs. *Id.* Entry of default is what the Clerk of Court enters when the default is established by affidavit or otherwise. *Id.*; Fed. R. Civ. P. 55(a). After the Clerk's entry of default, the plaintiff may apply to the district court for a judgment based on such default. *Brown*, 84 F.3d at 141. This is a default judgment. *Id.*

Default judgments are a drastic remedy. *Carrasco v. O'Toole*, 628 Fed. App'x 907, 910 (5th Cir. 2015) (per curiam) (unpublished) (quoting *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001)) (internal quotation marks omitted). Accordingly, the fact that a defendant is technically in default does not entitle a plaintiff to a default judgment as a matter of right. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (per curiam) (citation omitted). Rather, the entry of default judgment is committed to the discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977) (citing 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2685 (3d ed.)). District courts consider six factors when deciding whether to grant a default judgment: (1) whether the default was caused by a good-faith mistake or excusable neglect; (2) whether there has been substantial prejudice; (3) the harshness of a default; (4) whether there are material issues of fact; (5) whether grounds for a default judgment are clearly established; and (6) whether the court would think it was obligated to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

### III. Analysis

#### A. *Default Judgment*

In this case, all six *Lindsey* factors are satisfied and default judgment is warranted. First, because NCA has not filed a responsive pleading or otherwise appeared in this case, it has not contested any of the allegations of McCurdy's Complaint. *See Nishimatsu*, 515 F.2d at 1206 (noting that defendants admit the plaintiff's well pleaded allegations of fact by defaulting). Moreover, because it had notice of the suit and has had multiple opportunities to respond or appear, NCA has not given the Court any reason to believe that its failure to respond was caused by a good-faith mistake or excusable neglect. *See Saldana v. Zubha Foods, LLC*, SA:13-CV-00033-DAE, 2013 WL 3305542, at *3 (W.D. Tex. June 28, 2013) (noting that failure to respond in spite of multiple opportunities to do so does not indicate good-faith mistake or excusable neglect).

Second, NCA's failure to respond has "brought the adversary process to a halt, prejudicing Plaintiff's interest in pursuing the rights afforded him by law." *Saldana*, 2013 WL 3305542, at *3 (citing *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, Cv. No. 3:12-CV-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013)). Third, mitigating the harshness of default is the fact that NCA has known of the suit since July and had multiple opportunities to appear or respond. *See id.* (noting that harshness of default was mitigated because defendant had six months to answer or otherwise respond). Moreover, the requested default amount is only $2,290—inclusive of statutory damages, attorneys' fees, and costs.

The fourth and fifth factors are also satisfied because NCA, by defaulting, has admitted the allegations in the Complaint, which establish violations of the FDCPA and TDCPA. To state an FDCPA claim, a plaintiff must allege that the defendant is a "debt collector" collecting a debt.

15 U.S.C. § 1692a(6). The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). "Debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ." *Id.* § 1692a.

Section 1692e of the FDCPA prohibits the use of false, deceptive, or misleading representations in connection with the collection of debts. *Id.* § 1692e. McCurdy alleges that NCA violated two of the provisions from 1692e's non-exhaustive list of prohibited acts when it attempted to collect a debt he did not owe, falsely represented that he owed a past-due debt, and threatened legal action against him. (Docs. 1 at ¶¶ 24–30, 10-1 at 2.) A debt collector's representation that a debt is owed to it when it in fact is not, amounts to a misrepresentation barred by the FDCPA. *Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659, 666 (N.D. Tex. 2010).

Section 1692 also bars the use of unfair or unconscionable means to collect or attempt to collect a debt. 15 U.S.C. § 1692f. This includes the collection of any amount not expressly authorized by the agreement creating the debt or permitted by law. *Id.* § 1692f(1). McCurdy alleges this provision was violated when NCA attempted to collect a debt that he did not incur, authorize, or agree to. (Docs. 1 at ¶¶ 31–33, 10-1 at 2.)

The TDCPA is very similar to the FDCPA, but focuses on the "consumer," which is defined as "an individual who has a consumer debt." Tex. Fin. Code § 392.001(1). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household

purposes and arising from a transaction or alleged transaction." *Id.* § 392.001(2). A "debt collection" means "an action, conduct, or practice in collecting, or in soliciting for collection, consumer debts that are due or alleged to be due to a creditor." *Id.* § 392.001(5). A "debt collector" refers to "a person who directly or indirectly engages in debt collection and includes a person who sells or offers to sell forms represented to be a collective system, device, or scheme intended to be used to collect consumer debts." *Id.* § 392.001(6).

Like the FDCPA, § 392.304 of the TDCPA prohibits a debt collector from using certain practices that involve "fraudulent, deceptive, or misleading representations" when attempting to collect a debt. *Id.* § 392.304(a). McCurdy alleges that Defendant violated § 392.304(a)(8) of the TDCPA when it misrepresented in correspondence to Plaintiff that he owed the alleged debt. (Docs 1 at ¶¶ 34–35, 10-1 at 2.) For a statement to be a misrepresentation under the TDCPA, a defendant must have made a false or misleading assertion. *Reynolds v. Sw. Bell Tel., L.P.*, 2-05-356-CV, 2006 WL 1791606, at *7 (Tex. App.—Fort Worth June 29, 2006, pet. denied). Courts have held that a debt collector's representation that a debt is owed to it when it in fact is not, is a misrepresentation barred by the TCPDA. *Cox*, 726 F. Supp. 2d at 666 (N.D. Tex. 2010). *Cf. Reynolds*, 2006 WL 1791606, at *7 (letter stating that purported debtor owed money when he did not was not misrepresentation under TDCPA only because letter acknowledged that the accuracy of the debt was disputed).

Here, McCurdy has alleged that the debt owed is a "consumer debt" for "personal, family, or household purposes," NCA is a debt collector, NCA misrepresented that McCurdy owed a debt that he did not, NCA attempted to collect this debt even after being advised of its contested status, and NCA threatened legal action against him. These claims fall squarely within the ambit of the FDCPA and TDCPA. Moreover, because NCA has not contested any of the

allegations, the Court has no reason to conclude that they are untrue.

Sixth, there is no reason to think that the Court will be forced to set aside the default if NCA later challenges it. Finally, NCA is not a minor, incompetent, or on active duty in the military. *See* Fed. R. Civ. P. 55(b)(2); 50 U.S.C. § 3931. In light of the foregoing, the grounds for a default judgment are clearly established.

### B. *Damages & Attorneys' Fees*

While the Court has found that entry of default judgment is warranted on McCurdy's claims, it must further determine if it would be appropriate to award the remedies McCurdy requests in the pending motion. Federal Rule of Civil Procedure 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54. Although "the relief available "is restricted to what is requested in the pleadings, the Court must also determine if the requested relief is appropriate based on governing law." *Fagan v. Lawrence Nathan Assocs., Inc.*, 957 F. Supp. 2d 784, 801 (E.D. La. 2013).

Ordinarily, damages should not be awarded "without a hearing or a demonstration by detailed affidavits establishing the necessary facts" when a party seeks a default judgment for damages. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam). However, where the amount of damages and/or costs can be determined with certainty by reference to the pleadings and supporting documents and where a hearing would not be beneficial, a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

Here, McCurdy requests $1,000 in statutory damages and $1,290 in attorneys' fees under the FDCPA. McCurdy has provided the Court with documentary evidence to support his claims and the amount of attorneys' fees requested. Because this information establishes the basis for the damages and relief specified in the request for default judgment, it is not necessary for the

Court to hold a hearing. Furthermore, because NCA "has failed to take action in this matter, it is unlikely that it would participate in an evidentiary hearing to determine damages." *Fagan*, 957 F. Supp. 2d at 802. Accordingly, a hearing would not be beneficial and is unnecessary.

Section 1692k of the FDCPA authorizes actual damages, maximum statutory damages of $1,000, and reasonable attorneys' fees and costs for the prevailing party. 15 U.S.C. § 1692k. In determining the amount of liability, courts consider the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the extent to which such noncompliance was intentional, and other relevant factors. *Id.* § 1692k.

In light of McCurdy's allegations that NCA continued collection efforts and issued a legal threat even after being advised that McCurdy was the victim of identity theft and disputed the debt, the Court concludes that NCA's noncompliance was intentional and persistent. Accordingly, the maximum $1,000 statutory damage award McCurdy requests under the FDCPA is appropriate.[2]

As already discussed, a plaintiff is entitled to the costs of the FDCPA action, as well as his reasonable attorneys' fees. 15 U.S.C. § 1692k(a)(3). Attorneys' fees "are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). Prevailing attorneys carry the burden to produce satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of

---

[2] Under § 392.403 of the TDCPA, the damages available for violations of the statute are injunctive relief and actual damages. Tex. Fin. Code § 392.403(b). Reasonable attorneys' fees and costs may also be recovered if a person "successfully maintains an action." *Id.*; *London v. Gums*, CIV.A. H-12-3011, 2014 WL 546914, at *7 (S.D. Tex. Feb. 10, 2014). Statutory damages are only authorized for limited violations not at issue in this case. *See* Tex. Fin. Code § 392.403(e). Because McCurdy does not request TDCPA damages in his Motion for Default Judgment, however, the Court need not address the applicability of TDCPA damages.

reasonably comparable skill, experience, and reputation." *Id.* at n.11.

To calculate attorneys' fees, courts first calculate the lodestar fee. *Rutherford v. Harris Cnty.*, 197 F.3d 173, 192 (5th Cir. 1999) (citation omitted). This is done by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* The Court then considers twelve factors in determining whether to make upward or downward adjustments: (1) the time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues; (3) the skill required to properly litigate the issues; (4) whether the attorney had to refuse other work to litigate the case; (5) the attorneys' customary fee; (6) whether the fee is fixed or contingent; (7) whether the client or case imposed time constraints; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) whether the case was "undesirable"; (11) the type of attorney-client relationship and whether the relationship was long-standing; and (12) awards made in similar cases. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 488 (1989).

In this case, McCurdy requested $830 in attorneys' fees[3] and $460 in costs.[4] He argues for the reasonableness of this figure by citing other cases in this district where similar fees were awarded and by including a detailed accounting of hours expended by various members of his legal team. (*See* Docs. 10-1 at 4–6, 10-2.) The Court finds that McCurdy's arguments for $1,290 in fees and costs are supported by the affidavit and other evidence, including district precedent.[5]

---

[3] Specifically, McCurdy requests $250 per hour for senior associate Amy Ginsburg, $175 per hour for associate Ryan Fitzgerald, and $95 per hour for law clerk Zach Kimmel and paralegals Christine Vargas and Jason Ryan. (Docs. 10-1 at 5, 10-2.)

[4] The $460 includes the $400 filing fee and $60 service-of-process fee. (*See* Docs. 10-2, 10-3.)

[5] *See, e.g.*, *Turner v. Oxford Mgmt. Services, Inc.*, 552 F. Supp. 2d 648, 654 (S.D. Tex. 2008) (approving $300 per hour for senior partner, $175 per hour for less experienced associate, and $75 per hour for law clerks and legal assistants); *Serna v. Law Office of Joseph Onwuteaka*, 2014

An upward or downward adjustment is unwarranted.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Default Judgment (Doc. 10) is **GRANTED**. Default should be entered against National Credit Adjusters in the amount of $1,000 in statutory damages and $1,290 in attorneys' fees and costs.

SIGNED at Houston, Texas, this 28th day of April, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

WL 3749652, at *5–6 (S.D. Tex. July 29, 2014) (approving attorney with 21 years' experience at $300 per hour and an attorney with 17 years' experience at $250 per hour); *Szijjarto v. McCarrell*, 2014 WL 555122, at *4 (S.D. Tex. Feb. 12, 2014) (approving $335 for senior attorneys, $250 for another attorney, and $110 for paralegal); *Memon v. Pinnacle Credit Services, LLC*, 2009 WL 6825243, at *4 (S.D. Tex. May 21, 2009) (approving $300 per hour for senior attorney, $150 per hour for associate, and $95 per hour for paralegal). Moreover, in two recent cases in this district, McCurdy's attorney and members of her legal team were awarded the same fees now requested. *Cooper v. Oxford Law, LLC*, 4:14-cv-02095 (Jan. 30, 2015) (approving $250 for senior attorney Amy Ginsburg, $175 for a junior associate, and $95 for paralegal Christine Vargas); *Miller v. Oxford Law, LLC*, 4:14-cv-02280 (May 14, 2015) (approving $250 for senior attorney Amy Ginsburg and $95 for paralegal Christine Vargas).